HIRAM WALKER & SONS, INC. *v.* UNITED STATES (No. 4080) [1]

United States Court of Customs and Patent Appeals, May 31, 1938

B. A. Levett (*Val C. Guenther* of counsel) for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon* of counsel), for the United States.

[Oral argument April 11, 1938, by Mr. Levett, Mr. FitzGibbon, and Mr. Guenther]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

This case was decided by this court and an opinion handed down on November 22, 1937, 25 C. C. P. A. (Customs) 189, T. D. 49293, affirming a judgment of the United States Customs Court, dismissing the protest of appellant for untimeliness. On January 5, 1938,

[1] C. A. D. 4.
[2] JACKSON, Judge, took no part in the consideration or decision of this case.

appellant filed its petition for rehearing of the said cause, which petition was granted. On April 11, 1938, the cause was reargued and additional briefs were later filed. The facts, as stated in our former opinion, are as follows:

On December 19, 1933, appellant entered for warehousing twenty-six barrels of rye whisky, imported from Canada. According to the report of the Government gauger, the whisky then amounted to 1,473.66 gallons. On March 21, 1934, the collector of customs liquidated the entry upon the basis of the gauger's return. On March 27, 1936, the whisky was regauged, at the request of the importer, and 1,368.50 gallons were found to remain in the barrels. There being uncontradicted testimony to show that the barrels were not tampered with, and that there was no leakage, the difference of 105.16 gallons is claimed to be due to evaporation. On March 28, 1936, the appellant withdrew the 1,368.50 gallons of whisky but was required to pay duty on the basis of the original gauge— 1,473.66 gallons. Within sixty days after such payment (not sixty days after liquidation), the importer filed a protest against the liquidation and assessment of duties.

In the petition for rehearing and in the memorandum on behalf of appellant filed subsequent to oral argument, appellant argued the inapplicability of the case of *United States* v. *Andrews & Co.*, 14 Ct. Cust. Appls. 62, T. D. 41576, which was referred to in the decision of this court. Appellant has also reargued much that was covered in the original argument.

Our chief reason for granting a rehearing was to give further consideration to the decision in the *Andrews & Co.* case, which appellant claims, with respect to a certain fact, this court "misconceived." We, as the opinion will disclose, did not base our decision on the *Andrews & Co.* case, although we did cite it and refer to it as showing the attitude of this court toward the timeliness of a protest filed long after liquidation. In referring to the *Andrews & Co.* case, we made the following statement which was unnecessary to the decision of the case and which might be misleading:

There was no change of law in that case and appellant concedes that there is no change of law in this case. If there is a change of facts in the instant case, as the importer claims, there was also a change of facts in that case. Nevertheless, it was there definitely held that the demand by the collector for the duties on the goods not imported was not protestable. * * *

It must be remembered that in the case at bar appellant is arguing that while there was no change of law, there was such a change of facts as would warrant the collector in reliquidating or as would afford appellant the right to protest upon discovering the claimed loss. As we understand appellant's argument at the original hearing and now it is that when there is a change of facts subsequent to the importation and not discoverable until after the original liquidation, the importer has a right to protest the original liquidation within sixty days after the payment of the disputed duty and get relief for loss which occurred

subsequent to importation and subsequent to the expiration of sixty days after the original liquidation. Importer claims that there is a change of facts in this case because there was no importation; that there was no importation because the goods did not go into the commerce of the country.

In the *Andrews & Co.* case, *supra*, it was the contention of the importer that there was a nonimportation and under the facts there stated this might have been true. The goods, according to the contention there, never came into the country at all, while in the instant case they did come into the country even though they were not put into commerce.

In the last above-quoted statement the court meant nothing more than to call attention to the fact that there was a claimed nonimportation in each of the cases. But it is easy to see that the two cases are not on all fours and that the decision in the *Andrews & Co.* case is not sufficiently pertinent as to be controling of the issue here, and was never intended to be such by us. In our original decision in the instant case we held:

There is nothing in the statute to indicate that Congress ever contemplated that the importer of liquors who places them in bond until great evaporation has taken place has any right to be relieved of duty which accrues at the time of entry. It will be noticed that paragraph 813 of the Tariff Act of 1930, relating to wines, liquors, cordials, or distilled spirits, specifically provides that no allowance shall be made "for breakage, leakage, or damage" except where the same occurs while in transit to this country. Is it reasonable to assume that Congress contemplated that there would be an allowance for evaporation? We think not. It is our view that Congress, except where otherwise specifically provided, intended that the amount of duties on distilled spirits should be based upon the quantity thereof at the time of entry.

A holding here that the protest is untimely seems to us to be equivalent to holding that there is no remedy afforded by the statute for the alleged hardship concerning which the importer has made complaint.

It is our conclusion that under the circumstances of this case, appellant was authorized only to protest within sixty days from the time of the collector's liquidation, and that its protest filed at the time of withdrawal of the goods and payment of duties was untimely. * * *

We are of the opinion that we were correct in the last above-quoted statement. Congress never intended that allowance could be had for evaporation while liquor was in bond. The law specially provides that no allowance should be made for "breakage, leakage, or damage" except where the same occurs while in transit to this country. If no allowance was to be made for "breakage, [etc.]" why, in the absence of definite language to that effect, should it be concluded that it was the intent of the legislature to permit allowance for evaporation after entry? Of course, it follows that if there was no protestable right accruing after the evaporation, any protest that would be filed after sixty days from the original liquidation would be untimely.

We adhere to the decision heretofore rendered by this court, and the judgment of the United States Customs Court dismissing the protest is *affirmed*.